O’MALLEY, Circuit Judge,
concurring in part and dissenting in part.
I agree with and join the majority’s well-reasoned rulings on three of the four claim terms in dispute: “continuous contact,” “preferential activation zone,” and “ribbon.” I disagree, however, with its analysis and conclusion regarding the fourth claim term, “continuous microtextured skin layer.” I believe the district court erred in its treatment of the term and its rejection of 3M Innovation Properties Company and 3M Company’s (collectively, “3M”) argument—that skin layers having regions with and without microtexturing are within the plain meaning of the term. To the extent the majority affirms these errors, I *1337 dissent. Accordingly, I do not join Part II.B of the majority opinion. I would instead construe the term as follows.
I.
Turning first to the claim language, I do not believe that it excludes a skin layer where the extent of the microtexturing is anything other than “continuous” over the entire surface. The term “continuous microtextured skin layer over substantially the entire laminate” appears in claims 1, 2, 5, and 6 of U.S. Patent No. 5,691,034 (“the '034 patent”). The pertinent portion of claim 1 reads:
An elastomeric laminate consisting essentially of at least one elastomeric layer and at least one continuous microtextured skin layer over substantially the entire laminate wherein ...
'034 patent col. 28 11. 4(M3 (emphasis added).
As a matter of grammar, the term is best interpreted as a skin layer that is continuous, microtextured, and extends over substantially the entire laminate. Under a natural reading of term, i.e., its plain and ordinary meaning, the word “continuous” modifies the term “microtextured skin layer.” This follows simply from the grammatical structure of the phrase. “Continuous,” as an adjective, modifies the noun “skin layer” (in the same way the adjective “microtextured” does). If this word were meant instead to describe the microtexturing, it would be more natural to use the adverb form, “continuously,” since adverbs modify adjectives. Any reader, including a person of skill in the art, would thus understand the plain and ordinary meaning of the phrase to require a continuous “skin layer,” not continuous microtexturing. And the plain and ordinary meaning is always our starting point in a claim construction analysis. See Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed.Cir.2005) (en banc) (“We have frequently stated that the words of a claim “are generally given their ordinary and customary meaning.” ”). Because the word “continuous” does not modify the word “microtextured,” I agree with 3M on this point.
The question we must next ask is what does it mean for the skin layer to be “microtextured?” If the word “continuous” in the claim language does not define that term, then what does?
Since I find the claim language to impose no clear exclusion of skin layers that contain intermittent areas of microtexturing, I examine the written description for a clear disavowal of such skin layers. While the written description contains some language that may require complete microtexturing, I do not believe these passages meet the high burden necessary to limit the claim scope. See Bell Atl. Network Servs., Inc. v. Covad Commc’ns Grp., Inc., 262 F.3d 1258, 1268 (Fed.Cir.2001) (“We have previously held that, in redefining the meaning of particular claim terms away from the ordinary meaning, the intrinsic evidence must clearly set forth or clearly redefine a claim term so as to put one reasonably skilled in the art on notice that the patentee intended to so redefine the claim term. We have also stated that the specification must exhibit an express intent to impart a novel meaning to claim terms.”) (internal citations and quotation marks omitted). Specifically, the written description states:
Whether the laminate is prepared by coating, lamination, sequential extrusion, or a combination thereof, the laminate formed and its layers will preferably have substantially uniform thickness across the laminate. Preferably the layers are coextensive across the width and length of the laminate. With such a construction the microtexturing will be *1338 uniform over the elastomeric laminate surface.
'034 patent col. 10 11. 33-36 (emphasis added).
By stating that the microtexturing is preferably “uniform” over the elastomeric laminate surface, the written description does not clearly require microtexturing over the entire skin layer. First, this excerpt describes a preferred embodiment, to which claims typically are not limited. See Phillips, 415 F.3d at 1323 (“Although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.”). Second, it is unclear that “uniform” means “complete” or “continuous,” or that it refers to the amount of the skin layer that must exhibit microtexturing. It indicates instead, I believe, that the ridges in the skin layer that produce the microtexturing must have uniform dimensions,[1] regardless of how far over the surface those ridges extend. This is not to say that it was unreasonable for the majority or the district court to find some useful guidance in this passage. But, since it is at the least subject to varying interpretation, I believe the passage fails to meet the high burden necessary to limit claim scope. See Bell Atl., 262 F.3d at 1268.
Turning next to the prosecution history, while it does clearly limit claim scope, it does not do so in the way the district court believed. The '034 patent was rejected for obvious-type double patenting over U.S. Patent No. 5,344,691 (“the '691 patent”). To overcome the rejection, the applicants stated:
Claim 1 of the '691 patent essentially claims a multi-layer film laminate with “preferential activation zones” and “non-preferential activation zones.” The multi-layer film laminate preferentially elongates in the preferential activation zones forming an elastomeric laminate only in these zones. The invention disclosed in the '691 patent is patentably distinct from that claimed in the instant application at least in that claim 38 et al. of the instant application do not teach or suggest how to provide a laminate having these preferential and non-preferential activation zones. Rather, the instant claims are limited to a laminate material which is elastomeric over substantially the entire laminate.
J.A. 1460-61 (emphasis added).
The laminate is elastomeric where it is microtextured. Therefore, this statement requires laminate material that is micro-textured over “substantially the entire laminate.” But this statement does not *1339 require “continuous” or “complete” “microtexturing.” The microtexturing must extend “over substantially the entire laminate,” not over all of it. Discontinuities in the microtexturing are still within the scope of the claim term, so long as they do not reduce the microtexturing below a “substantial” portion of the laminate. This word of degree, “substantially,” was sufficient to overcome the obviousness type double patenting rejection. The claims require no more. What is “substantial” and whether an accused product qualifies as such seems to me a question of fact for a jury to resolve. See TechSearch, L.L.C. v. Intel Corp., 286 F.3d 1360, 1369-70 (Fed.Cir.2002) (“Whether the accused device contains an element corresponding to each claim limitation or its equivalent is a question of fact.”); Crystal Semiconductor Corp. v. TriTech Microelectronics Int’l, Inc., 246 F.3d 1336, 1345 (Fed.Cir.2001) (“Application of the claim to the accused device is a question of fact.”).
I ultimately believe the wording of the district court’s construction was very close to the correct one. Much like the trial court, I would construe the term as “a continuous skin layer, with microtexturing that extends over substantially the entire surface area of the laminate.” I do not agree, however, with the district court’s construction to the extent it requires that the “microtexturing” be “continuous” from start to finish.
II.
In its claim construction opinion, the district court construed the term “continuous microtextured skin layer over substantially the entire laminate” as “substantially the entire surface area of the laminate.” 3M Innovative Prop. Co. v. Tredegar Co., No. 09-3335, 2011 WL 6004023, at *24 (D.Minn. Nov. 30, 2011). On its face, the district court’s construction seems to be one which requires microtexturing that extends over “substantially the entire surface area of the laminate,” a construction with which I would agree.
The district court, however, went on to reject 3M’s argument that “the term ‘continuous’ relates to the skin layer but not the microtexturing and thus does not require continuous microtexturing.” Id. at *23. As discussed above, I disagree with this aspect of the district court’s construction; I agree with 3M.
The district court based this explanation of the scope of its construction on a distinction it saw between the two families of patents involved in this case—the “Krueger patents” (the '034 patent and U.S. Patent No. 5,501,679 (“the '679 patent”)) and the “Hanschen patents” (U.S. Patent No. 5,468,428 and “the '691 patent”):
While both the Hanschen and the Krueger patents relate to multi-layer laminates that are stretched beyond the skin layer’s deformation [limit] to become elastic, the Hanschen and Krueger Patents differ in the following way: in the Hanschen Patents, only certain regions of the laminate are stretched beyond the deformation limit (and therefore the laminate has regions both with and without a microtextured surface); and the Krueger Patents do not teach a laminate with the different regions or zones (preferential activation zones that are stretched to have a microtextured surface and non-preferential zones that do not have a microtextured surface). In addition, the '034 Patent teaches that microstructuring is continuous.
Id. Based on this distinction, the district court held that the microtexturing must be “continuous,” or, that is, the claims of the '034 patent do not cover skin layers with regions that are not microtextured.
But, the distinction between the two families of patents does not mandate this conclusion. I agree that the Hanschen *1340 patents disclose laminates with regions that are microtextured and regions that are not. But there is no basis to view the two families of patents as mutually exclusive. The Krueger patents, in my opinion, are not limited to laminates that are fully microtextured. And the earliest filed Krueger patent (the '679 patent) and Hanschen patent (the '691 patent) share the same filing date, making it conceivable that the Krueger family is a broader one, covering various subspecies (i.e., fully-microtextured and partially-mierotextured laminates), while the Hanschen family is drawn only to one of those subspecies (partially microtextured laminates).
III.
Turning next to the majority’s analysis, I do agree with some of it, in particular, the statement that “[cjlose examination of the intrinsic and extrinsic references supports the middle path identified by the district court in which a skin layer can have non-microtextured areas, but the microtexturing encompasses ‘substantially the entire surface area of the laminate.’ ” Majority Op. at 1327. This seems to fully align with my conclusion. If the majority reached this holding through the analysis I lay out above, I happily would join.
But the majority determines that “the written description is unambiguous in teaching that the microtexturing is continuous.” Id. at 1327. As discussed above, I disagree. I believe the microtexturing need not be “continuous;” it only needs to extend over substantially the entire laminate.
The majority also looks for a potential narrowing of claim scope in the claim language or written description. Specifically, the majority asks whether the specification limits the microtexturing to “a single region.” See id. (“The written description is unambiguous in teaching that the microtexturing is continuous, but not restricted to a single zone or region of the skin layer”) (emphasis added); id. at 1327 (“By contrast, there is no discussion in the written description that minimizes the microtexturing to SM’s suggested single region of the skin layer”) (emphasis added); id. at 1328 (“We affirm the district court’s interpretation of ‘continuous microtextured skin layer,’ and as previously clarified, to be ‘continuous’ the microtexturing is ‘substantially uniform’ as opposed to limited to a single region or zone”) (second emphasis added). This reasoning turns the disclaimer analysis on its head. The relevant inquiry is not whether the microtexturing is limited to a single region, but whether the term “continuous microtextured skin layer” was narrowed to exclude partiallymierotextured skin layers, such as those with microtexturing in only one region.
Perhaps the majority was led astray by 3M’s proposed construction: “one unified skin layer over substantially the entire laminate having at least one microtextured region.” But this construction does not limit the microtexturing to a single region. Instead, it merely requires “at least” one microtextured region—thus including within its scope skin layers with some regions having no microtexturing, so long as at least one region is microtextured. Under this construction, the skin layer must be at least partially-mierotextured, a concept with which I agree. I do, however, ultimately reject 3M’s construction to the extent it reads on skin layers with microtexturing that does not extend over substantially the entire laminate.
IV.
To conclude, I believe the term “continuous microtextured skin layer over substantially the entire laminate” should be construed as “a continuous skin layer, with microtexturing that extends over substan *1341 tially the entire surface area of the laminate,” effectively the same wording employed by the district court. I disagree, however, with the majority and the district court to the extent they believe this construction requires “continuous microtexturing” over the entire skin layer. No such requirement is mandated by the patents-in-suit. I dissent from the portions of the majority opinion so holding and would reverse the district court’s similar ruling.

. These dimensions are discussed in further detail later in the same section of the patent:
FIG. 2 is a schematic diagram of the common dimensions which are variable for uni-axially stretched and recovered laminates. The general texture is a series of regular repeating folds. These variables are the total height A-A', the peak-to-peak distance B-B' and the peak-to-valley distance C-C’. These variables were measured for a series of polyolefin/styrene-isoprene-styrene/polyolefin laminates. General ranges for A-A’, BB' and C-C' were noted. For total height (A-A'), the range measured was from 0.79 to 32 mils (0.02 to 0.81 mm). For peak-to-peak distance (B-B'), or the fold period, the measured range was from 0.79 to 11.8 mils (0.025 to 0.30 mm). For peak-to-valley distance (C-C'), the measured range was from 0.04 to 19.7 mils (0.001 to 0.5 mm). These ranges are only exemplary of the surface characteristics obtainable by the practice of the present invention. Laminates of other compositions will demonstrate different microstructures and microstructure dimensions. It is also possible to obtain dimensions outside the above ranges by suitable selection of core/skin ratios, thicknesses, stretch ratios and layer compositions.
'034 patent col. 10 1. 62—col. 11 1. 14 (emphasis added). In fact, all of columns 11 and 12 of the '034 patent describe the different characteristics the microtexturing can have.